UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HECTOR MANUEL ESTRADA CERVANTES,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,

Respondents.

Case No. 1:26-cv-00640-KES-CDB (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT IN PART PETITION FOR WRIT OF HABEAS CORPUS (A-Number 089-956-863)

(Docs. 1, 8)

**7-Day Objection Period**

Petitioner Hector Manuel Estrada Cervantes ("Petitioner"), a federal immigration detainee proceeding pro se and *in forma pauperis*, initiated this action on January 26, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a supplemental petition thereto while in the custody of Immigration and Customs Enforcement ("ICE") at the Golden State Annex Detention Facility in McFarland, California.[1] (Docs. 1, 8). Respondents are Warden of the Golden State Annex Detention Facility, Todd Lyons (ICE Director), Kristi Noem (Secretary of Homeland Security), Pamela Bondi (United States Attorney General), and the current or acting San Francisco ICE Field Office Director (collectively, "Respondents"). *See id.*

Respondents timely responded to the petition (*see* Doc. 9) and Petitioner made no further

---

[1] Petitioner's supplemental petition was filed on this date and entered on the docket on February 3, 2026. (Doc. 8) (*see* Dkt. Text).

1

filings of a traverse, reply, or otherwise. *See* (Doc. 7). Having reviewed and considered the full record, for the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted in part as to Petitioner's claim for violation of his procedural due process rights under the Fifth Amendment to the U.S. Constitution ("Count I"). *See* (Doc. 1 at 16-17); (Doc. 8 at 13-14).

I.        **Relevant Background**

The relevant facts are taken from the parties' respective briefings. *See* (Docs. 1, 8, 9). Petitioner is a citizen and native of Mexico who unlawfully entered the United States at an unknown location on an unknown date. *See* (Doc. 9 at 2); (Doc. 9-1, Declaration of Deportation Officer Sellenia A. Olson ("DO Olson Decl.") ¶ 6); *see* (Doc. 9-2 at 3, Ex. 1) (February 17, 2025, Form I-213 Record of Deportable/Inadmissible Alien) ("There is no record of legal entry into the U.S."). Petitioner does not allege, and the record does not reflect that he was initially arrested and placed in immigration custody at or near the time he entered the United States; Respondents confirm that Petitioner entered the United States without inspection. *See id.*; (Doc. 9 at 2) ("He entered the United States at an unknown time and place and was net [sic] apprehended by immigration authorities when he entered illegally."). Petitioner alleges that he has been in the country for over 23 years supporting his family of four U.S. citizen children and niece. (Doc. 1 at 5).

On November 9, 2008, Petitioner was arrested in Oregon for various misdemeanor offenses. DO Olson Decl. ¶ 7; *see* (Doc. 9-19, Ex. 18). On March 5, 2020, Petitioner was arrested on a criminal complaint issued in the Northern District of California with offenses under the Controlled Substances Act. (Doc. 9-17, Ex. 16). He was arraigned the day of his arrest and later ordered detained following a detention hearing. *Id.* On June 24, 2021, Petitioner was ordered released on conditions, including an unsecured bond. *Id.* On September 23, 2021, an indictment was returned charging Petitioner and another with the same Controlled Substances Act offenses charged in the underlying criminal complaint. *See* (Doc. 9-17, Ex. 16). On December 12, 2022, Petitioner pleaded guilty to conspiracy to distribute and possess with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, and for possession with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, in

violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(B)(viii).  On September 13, 2023, Petitioner was sentenced to time-served and placed on a three-year term of supervised release.  *Id.*  The judgment imposed other special conditions of supervision, including to not commit another crime, to pay any special assessment imposed by the judgment, to submit to searches by a United States probation officer, to participate in a program of testing and treatment for drug and alcohol abuse, and to abstain from the use of all alcoholic beverages.  *See id.* at 6.

More than one year following his sentencing and commitment to federal supervised release, on December 26, 2024, Petitioner came to the attention of immigration authorities at the Sacramento ICE Enforcement and Removal Operations ("ERO") pursuant to a referral from the U.S. Probation Office.  DO Olson Decl. ¶ 9; *see* (Doc. 9-2 at 2, Ex. 1) ("Sacramento Fugitive Operations conducted DHS/ICE databases check ins … and determined that [Petitioner] had no history of previously filing for any immigration benefits.").  On February 17, 2025, Sacramento ICE ERO encountered, arrested, and detained Petitioner in ICE custody.  *Id.* ¶ 10; Ex. 1.  That same date, ICE issued a Form I-851 Intent to Issue Final Administrative Order which indicated a charge against Petitioner as being deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony. *Id.* Ex. 3.

On March 28, 2025, Petitioner was issued a Form I-863 Notice of Referral to Immigration Judge and placed into withholding-only proceedings as an alien who has been ordered removed. *Id.* ¶ 12; (Doc. 9-3, Ex. 2).  On May 14, 2025, Petitioner received from ICE a decision to continue detention based on his criminal convictions.  *Id.* ¶ 11; (Doc. 9-8, Ex. 7).  In that decision, Petitioner was informed that if he has "not been released or removed from the United States at the expiration of the three-month period after this 90-day review, jurisdiction of the custody decision in [his] case will be transferred to ICE Headquarters[.]").  *See id.*

On August 27, 2025, at a custody redetermination hearing before an immigration judge, Petitioner represented that he wished to withdraw any bond request, and the immigration judge issued an order allowing Petitioner to withdraw his bond request.  *Id.* ¶¶ 16, 17; (Doc. 9-12, Ex. 11); (Doc. 9-13, Ex. 12) (Petitioner's request for a custody redetermination is "[w]ithdrawn without prejudice by [Petitioner].").

On July 11, 2025, an immigration judge issued a decision denying Petitioner's applications for protection, which Petitioner appealed on July 23, 2025. *Id.* ¶¶ 13, 14; (Doc. 9-9, Ex. 8) (July 11, 2025, order of the immigration judge denying Petitioner's requests for withholding and deferral of removal); (Doc. 9-10, Ex. 9). On January 23, 2026, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of his immigration case. *Id.* ¶¶ 18-20; (Doc. 9-16, Ex. 15).

On February 2, 2026, Petitioner filed a petition for review and a motion to stay removal with the Ninth Circuit Court of Appeals, which remains pending. *Id.* ¶ 21; (Doc. 9-18, Ex. 17).

## II.  Governing Authority

### A.  The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

### B.  Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

#### 1.  Full Removal Proceedings and Discretionary Detention (§ 1226)

The "usual removal process" involves an evidentiary hearing before

4

an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

## 2.    Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in

5

clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to

6

vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785

(2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

### C.     Parole Revocation

In *Y-Z-H-L v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025), the court explained the parole process in immigration cases and noted that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision.  The court held:

Section 1182 . . . has a subsection titled "Temporary admission of nonimmigrants," which allows noncitizens, even those in required detention, to be "paroled" into the United States. This provision, at issue in this case, states:

The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and **when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or**

8

**be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.**

8 U.S.C. § 1182(d)(5)(A).

*Id.* at 1133 (emphasis added).  *Y-Z-H-L* determined that under the Administrative Procedure Act, immigration parolees are entitled to determinations related to their parole revocations that are not arbitrary, capricious or an abuse of discretion.  *Id*. at 1146-47.  An agency acts arbitrarily and capriciously by failing to make a reasoned determination or where the agency fails to "articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id*. at 1144 (footnote and citation omitted).  Parole revocations in the context of the INA must occur on a case-by-case basis and may occur "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." *Id*. at 1133 (quoting 8 C.F.R. § 212.5(e)).  8 C.F.R. § 212.5(e) requires written notice of the termination of parole except where the immigrant has departed or when the specified period of parole has expired.

Applying *Y-Z-H-L* and § 212.5(e), in *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025), the court found that the INA requires a case-by-case analysis as to the decision to revoke humanitarian parole:

> This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole "must attend to the reasons an individual [noncitizen] received parole." *See id*. There is no indication in the record that the government conducted any such analysis here. On the contrary, the letter Mata Velasquez received merely stated summarily that DHS had "revoked [his] parole." Docket Item 62-1 at 5. Thus, there is no indication that—as required by the statute and regulations—an official with authority made a determination specific to Mata Velasquez that either "the purpose for which [his] parole was authorized" has been "accomplish[ed]" or that "neither humanitarian reasons nor public benefit warrants [his] continued presence...in the United States." *See* 8 C.F.R. § 212.5(e)(2)(i). As a result, DHS's revocation of Mata Velasquez's parole violated his rights under the statute and regulations. *See Y-Z-L-H*, 2025 WL 1898025, at *13.

*Id*. at 146.  And in *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court reached

9

a similar conclusion relying on the Due Process Clause:

> . . . **even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody**. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

*Id.* (emphasis added). Other courts, including this Court, have held similarly. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

## III.    **Exhaustion**

### A.    **Governing Authority**

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d

742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived."  *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### B.    Analysis

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) as an alien deportable by reason of having committed an aggravated felony under the INA.  (Doc. 9 at 2).  *See Avilez v. Garland*, 69 F.4th 525, 533-34 (9th Cir. 2023) (*citing Jennings v. Rodriguez*, 583 U.S. 281, 303, 305-06 (2018) ("We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes" and "§ 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'")); *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'") (quoting *Laing*, 370 F.3d at 1000); *Chavez v. Noem*, -- F. Supp. 3d. --, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) ("The Court therefore finds the prudential exhaustion requirements waived for futility.  Because Petitioners need to show only one of the *Laing* factors applies, … the Court need not address the other factors.") (internal citation omitted).[2]

---

[2] Although the record reflects that Petitioner requested but later withdrew his request for a bond hearing before an immigration judge (*see* Doc. 9-12, Ex. 11; Doc. 9-13, Ex. 12), the undersigned is aware that other immigration judges at the same immigration court (Adelanto, CA) have informed immigration detainees that they lack jurisdiction to consider a detainee's bond request and thereafter invite the detainees to withdraw the bond requests.  *See, e.g., Daley v. Andrews*, No. 1:25-cv-00922-KES-CDB (E.D. Cal.), Docs. 17 & 19 (transcripts of bond

For these reasons and because Respondents do not argue Petitioner should be required to exhaust administrative remedies, waiver of the prudential exhaustion requirement for Petitioner's claim for habeas corpus relief is appropriate. *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) (waiving exhaustion requirement; "The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019) (same); *Cortez v. Sessions*, 318 F. Supp. 1134, 1138-39 (N.D. Cal. 2018) (same); *Carmelo Beltran v. Kristi Noem*, No. 25cv2650-LL-DEB, 2025 WL 3078837, at *4 (S.D. Cal. Nov. 4, 2025) (same); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7, n.9 (E.D. Cal. Oct. 27, 2025) (same); *Kuzmenko v. Phillips*, No. 25-cv-00663-DJC-AC, 2025 WL 779743, at *4 (E.D. Cal. Mar. 10, 2025) (same)).

## IV.   **Discussion**

Petitioner asserts three causes of action in his original and supplemental petition: (1) violation of procedural due process under the Fifth Amendment to the U.S. Constitution ("Count I"), *see* (Doc. 1 at 16-17); (Doc. 8 at 13-14); (2) violations of the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, Implementing Regulations, and the Administrative Procedure Act based on potential removal to a third country; and (3) punitive third-country banishment in violation of the Fifth and Eighth Amendments. *See* (Doc. 1 at 16-17); (Doc. 8 at 13-18).

As set forth below, because the undersigned finds that Respondents have violated Petitioner's constitutional rights to procedural due process, and because Petitioner's other claims seek the same or similar relief (*i.e.*, for immediate release and to enjoin Respondents from re-detaining Petitioner unless his re-detention is justified at a custody hearing before a neutral arbiter in which the government bears the burden of proof), the undersigned forbears from addressing Petitioner's other claims.

///

hearings).  Accordingly, Petitioner's withdrawal of his bond request here does not undermine the bases for waiving the prudential exhaustion requirement.

**A.      Procedural Due Process**

1.      Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest

13

in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

### 2. Analysis – Relevant Statutory Detention Authority

Respondents maintain that Petitioner is an aggravated felon that is subject to mandatory detention under 8 U.S.C. § 1226(c). (Doc. 9 at 2).

Another judge of this Court has addressed and applied the holdings of the key Supreme Court and Ninth Circuit rulings applicable here, and the undersigned adopts that analysis herein (*see Kakkar v. Chestnut*, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *4-5 (E.D. Cal. Dec. 15, 2025)):

Under 8 U.S.C. § 1226(a)(2), DHS "may continue to detain" or "may release the alien" on bond or conditional parole, "pending a decision on whether the alien is to be removed from the United States." Such conditional release, however, may be revoked by DHS "at any time." 8 U.S.C. § 1226(b). The Board of Immigration Appeals ("BIA") has placed the following limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981).

Alternatively, under Section 1226(c), DHS "shall take into custody any alien who is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(iii) of this title." 8 U.S.C. § 1226(c). This includes any "alien who is convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Under this provision, non-citizens may be released "only if the Attorney General decides ... that release ... is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation ... and the alien will not pose a danger to the safety of other[s] ... and is likely to appear for any scheduled proceeding." *Id.* at § 1226(c)(4). Thus, noncitizens detained under this category are not entitled to bond hearings as those detained under § 1226(a) are. *See Jennings v. Rodriguez*, 583 U.S. 281, 303–304 (2018) ("By expressly stating that the covered aliens may be released 'only if' certain conditions are met, § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions.") (emphasis in original).

Section 1226(c)'s mandatory detention requirement applies even if the government does not immediately detain a criminal non-citizen upon immediate release from a correctional facility. *See Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (finding that the Ninth Circuit's interpretation—namely, that criminal aliens not arrested immediately upon release from criminal custody are exempt from § 1226(c)'s mandatory detention and thus entitled to a bond hearing—is wrong). However, the Supreme Court expressly noted that its decision, "on the meaning of that statutory provision[,] does not foreclose as-applied challenges—that is, constitutional

14

challenges to applications of the statute." *Id*. at 420. Courts routinely review as-applied constitutional challenges to § 1226(c) detention. *See e.g., Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 WL 2744397, at *5 (N.D. Cal. March 31, 2023); *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025).

As Respondents correctly note, Petitioner has been convicted of an aggravated felony—for violations of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(B)(viii)—such that he is subject to mandatory detention under § 1226(c). *See* (Doc. 9 at 3); (Doc. 9-17, Ex. 16) (N.D. Cal. Sept. 21, 2023, amended judgment in criminal case CR-21-00376-002 VC). Section 1226(c) authorizes immigration authorities to take into custody noncitizens deportable by reason of having committed any offense covered in § 1227(a)(2)(B). 8 U.S.C. § 1226(c)(1)(B). This includes any noncitizen who (1) is convicted at "any time after admission of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance …, other than a single offense involving possession for one's own use of 30 grams or less of marijuana[,]" or (2) any noncitizen "who is, or at any time after admission has been, a drug user or addict[.]" 8 U.S.C. § 1227(a)(2)(B)(i)&(ii). Because Respondents show that Petitioner is subject to mandatory detention under § 1226(c) based on his conviction for violations of § 21 U.S.C. §§ 846 and 841(a)(1) & (b)(1)(B)(viii), under the statutory framework above, Petitioner is subject to § 1226(c)(4)'s release provision and therefore is not entitled to bond hearings in the same fashion as those detained under § 1226(a).

Notwithstanding the undersigned's finding that Petitioner is subject to mandatory detention under § 1226(c), here, Petitioner raises a due process argument that his "ongoing prolonged detention without a [bond] hearing violates due process." (Doc. 1 ¶ 49). As explained in the statutory scheme above, *Preap* "does not foreclose as-applied challenges … to applications of [§ 1226(c)]." *Preap*, 586 U.S. at 420; *Kakkar*, 2025 WL 3638298 at *5.

Therefore, the undersigned considers Petitioner's as-applied challenge to his re-detention raised in his due process claim.

### 3.    Analysis – Procedural Due Process

On Petitioner's as-applied procedural due process challenge to his continuing detention by

15

immigration authorities, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and …[(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Petitioner has an underlying, continuing liberty interest in being free from detention. Specifically, although initially detained following his arrest on controlled substance-related offenses in the Northern District of California, Petitioner ultimately was released from custody and remained on pretrial release for more than two years prior to pleading guilty to charges contained in the indictment. The docket does not reflect, and Respondents do not argue, that Petitioner ever violated his terms of pretrial release. Ultimately, Petitioner was sentenced to time served and a three-year term of supervised release on conditions including to not commit crimes, to submit to searches by a United States probation officer, and to participate in a program of testing and treatment for drug and alcohol abuse. *See* (Doc. 9-17 at 4, 6, Ex. 16); *see id.* at 4 ("The court imposes a three-year term of supervised release. However, upon release from imprisonment, [Petitioner] will likely be deported and will not be in the United States to be supervised. … "If the [Petitioner] is not deported and remains in this country, [he] shall be subject to the conditions of supervised release[.]"). In sum, Petitioner remained out of custody under a federal court's supervised pretrial release and post-conviction supervised release for more than three-and-one half years, without incident, while supporting his family. Indeed, Respondents do not show any material change in circumstances as to flight risk or danger to the community to justify Petitioner's detention now. *See, e.g., Kakkar*, 2025 WL 3638298, at *6 (finding petitioner who completed three-year term of supervised release without incident held a liberty interest in freedom from detention under the Due Process clause); *id.* at *5 ("in these cases, ICE did not immediately detain the petitioners upon their release from prison. … Instead, the petitioners successfully reintegrated into their communities for several years before being detained pursuant to § 1226(c)."); accord *Carballo*, 2025 WL 2381464, at *6 ("The courts in [*Perera* and *Pham*] found that the petitioners possessed a protected liberty interest arising from their several years of post-conviction freedom[.]").

16

The undersigned agrees with other courts and other judges of this Court that a noncitizen who sustains a conviction for an aggravated felony and who successfully serves their sentence, including terms of court-imposed supervised release without incident, maintains a liberty interest in their freedom that implicates protections under principles of procedural due process. *See Kakkar*, 2025 WL 3638298, at *5 (discussing, *inter alia*, *Perera*, which "involv[ed] a legal permanent resident, convicted of possession with intent to distribute controlled substances, released from prison in 2015, and detained by ICE for the first time in April 2021" but "successfully reintegrated into their communities for several years before being detained pursuant to § 1226(c)" and succeeded in "raising [an] as-applied due process challenge[] to [his] detention without a bond hearing[.]"); *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process."); *Pham*, 2023 WL 2744397 at *6 (finding liberty interest for petitioner who was released from prison in 2015 and detained by ICE for the first time in 2023); *Perera*, 2021 WL 2400981, at *2, 5 (finding petitioner, who was convicted of possession with intent to distribute controlled substances, released from prison in 2015, and detained by ICE for the first time in April 2021, has a "grave" liberty interest). *Cf. Daley v. Andrews*, No. 1:25-cv-00922-KES-CDB, 2026 WL 101840, at *9-10 (E.D. Cal. Jan. 14, 2026) (finding a petitioner mandatorily detained pursuant to § 1226(c) did not have a protectible liberty interest because he had remained in continuous custody and never released on supervision).

Because Petitioner has shown he has a protected liberty interest to remain free from detention based on his release under a federal court's supervised pretrial release and post-conviction supervised release for more than three-and-one half years, without incident, the undersigned must determine what process is due before the government may terminate that liberty interest. To determine this, the undersigned considers the following factors articulated in *Mathews*: "[(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

17

requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context); *id*. at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has shown he has a significant private interest in remaining on release from detention.  He had been released from custody under federal court supervision for more than three-and-one half years without incident prior to his immigration detention.  He alleges that he has lived in the country supporting his family of four U.S. citizen children and niece, and Respondents do not assert or otherwise show that Petitioner violated any conditions of his supervision or committed any additional crimes while on release.  (Doc. 1 at 5); *see* (Doc. 9). Petitioner's continued liberty interest in remaining on release is undermined by his immigration detention without a bond hearing.  *Doe*, 787 F. Supp. 3d at 1093-94 ("Freedom from imprisonment is at the core of the Due Process Clause….  The lengthy duration of his conditional release as well as the meaningful connections [he] seems to have made with his community during that time create a powerful interest for [him] in his continued liberty.").

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable here where he has not received any bond or custody redetermination.  *Id*. at 1094; *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Because there were no procedural safeguards to determine if Petitioner's detention was justified, ICE has already conducted the initial 90-day post-order custody review and informed Petitioner that his detention would continue, *see* (Doc. 9-8, Ex. 7), and Respondents proffer no facts indicating any change in circumstances while Petitioner was out of custody on supervised release sufficient to justify Petitioner's re-detention, the probable value of the additional procedural safeguard of a bond hearing to determine whether Petitioner is a flight risk or a danger to the community is high such that this factor weighs in favor of granting a bond hearing.  *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *A.E.*, 2025 WL 1424382 at *5; *Ramazan*, 2025 WL

18

3145562, at *6.  Therefore, this factor weighs in favor of granting a bond hearing.

Third, the government's interest in detaining Petitioner without a bond hearing is low.  *Doe*, 787 F. Supp. 3d at 1094 (citation omitted); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."); *see Carballo*, 2025 WL 2381464, at *8 ("The government has thus far not argued or identified any new factual circumstances in the past five years that would affect such a determination."); *Kakkar*, 2025 WL 3638298, at *7 ("The government may have a significant interest in protecting the public from dangerous criminal aliens. However, such argument is undermined somewhat by the fact that Respondents waited four years to arrest the Petitioner and have not identified changed circumstances that now justify his arrest."). "The effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094.  Therefore, any additional burden from requiring the government to seek a bond hearing before it may re-detain Petitioner does not outweigh his liberty interest and the risk of erroneous deprivation.  Accordingly, this factor weighs in favor of granting a bond hearing.

In sum, the undersigned finds that, under *Mathews*, Respondents have violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution through his arrest in February 2025 and continuous and continuing detention thereafter.

**B.     Petitioner's Other Claims**

Because the undersigned finds that the Court may grant the full relief to which Petitioner is entitled in recommending that the writ should issue as to Petitioner's claim for violation of procedural due process (Count I), the undersigned declines to address Petitioner's other claims.

**C.     Relief**

Respondents do not assert that Petitioner is a flight risk or a danger to the community and have not identified any material changed circumstances since Petitioner was released under supervision.  Accordingly, the undersigned finds and will recommend that Respondents be ordered to afford a bond hearing to Petitioner consistent with the holdings in the decisions noted above

19

(*Kakkar*, *Perera*, and *Pham*). *See Prior v. Andrews*, No. 1:25-cv-01131-JLT-EPG (HC), 2026 WL 698801, at *2 (E.D. Cal. Mar. 12, 2026) (adopting in part findings and recommendations to grant petition for writ of habeas corpus but declining to order the petitioner's immediate release) (citing *Kakkar*, 2025 WL 3638298, at *6-7, *Perera*, 2021 WL 2400981, at *4, and *Pham*, 2023 WL 2744397, at *1-2). Immediate release is not warranted because immigration authorities never previously detained and released Petitioner on any finding that he was neither a flight risk nor danger to the community. *See id*.

Further, the undersigned will recommend the government bear the burden at a bond hearing of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight or that there is a material change in his removal situation that would justify his re-detention. *See id*. at *3; *Carballo*, 2025 WL 2381464, at *9; *Kakkar*, 2025 WL 3638298, at *6; *Pham*, 2023 WL 2744397, at *7.

**V.      Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Docs. 1, 8) be GRANTED in part as to Petitioner's procedural due process claim arising under the Fifth Amendment to the U.S. Constitution (Count I). *See* (Doc. 1 at 16-17); (Doc. 8 at 13-14).

2. Respondents be ORDERED to hold a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community or that there is a material change in his removal situation such that physical custody is legally justified.[3]

---

[3] The undersigned also recommends the following:

If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here, SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondents SHALL

20

3.  The Clerk of the Court be DIRECTED to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved.  *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require.").  Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **April 1, 2026**   _____
UNITED STATES MAGISTRATE JUDGE

---

provide a bond hearing in the timeframe required by law.

21